FILED
98 JUN -4 AM 9:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED pub
JUN 4 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH DELLAVECCIA, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| BAYER CORPORATION, | ) | 97-C-0836-W |
| Defendant. | ) | |

**MEMORANDUM OF OPINION DENYING CLASS CERTIFICATION
AND DISMISSING THE CLAIMS OF WINSTON MORRIS AND CLEOPHUS GAINES**

In this putative national class action, the original plaintiffs Joseph Dellaveccia, Wright Williams, and Johnnie Mae Foster claimed that the defendant Bayer Corporation committed fraud and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law by claiming in its "Added Value" advertising campaign that "only Genuine Bayer Aspirin can reduce the risk of a second heart attack." Original Complaint, ¶ 8. It is the plaintiffs' contention that the "Added Value" advertisements are designed to mislead the consumer to a groundless belief that only Genuine Bayer Aspirin can produce this benefit, when in fact generic aspirin will produce the same benefit. The plaintiffs assert that because of the misleading advertisements, purchasers of Genuine Bayer Aspirin pay more for the product than they would for generic aspirin. Bayer denies the allegations of the complaint.

Pennsylvanian Joseph Dellaveccia stipulated to his dismissal as a plaintiff in May 1997. Wright Williams, an Alabamian, died six months later. He was accordingly dismissed as a party. Plaintiff Johnnie Mae Foster concedes that she is unable to fairly represent the putative class because of her impaired physical health. For these reasons, on November 17, 1997, the court denied the plaintiffs' request for class certification, without prejudice to the right of unnamed class members to join this action.

Ms. Foster's subsequent motion to add Winston Morris, Cleophus Gaines, Eloise Calligan, and Issac Adkins as plaintiffs was granted by the court. These new plaintiffs are residents of Greene County, Alabama. Two of the new plaintiffs, Calligan and Adkins, failed to appear for their depositions. Counsel for the putative class stipulated to their dismissal as class representatives.

Thus, the only remaining class representatives are Cleophus Gaines and Winston Morris.

The question before the court is whether the action may proceed as a class action.

I

In order to maintain this action as a class action, the putative class representatives must satisfy all of the requirements

of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).[1] Put another way, the plaintiffs must prove numerosity, commonality, typicality, and adequacy in order to meet the requirements of Rule 23(a); they must prove predominance and superiority to meet the requirements of Rule 23(b).

---

[1]

Fed. R. Civ. P. 23(a) provides as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(b)(3) provides as follows:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . . .
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

II  A

The numerosity requirement is easily met in this case.

The class definition proposed by its putative class representatives is sweeping: "[a]ll retail purchasers of Bayer aspirin during the time period from when the ad campaign in question commenced to six months after its termination or such narrower class as the court may certify." Amended Complaint, ¶ 15. According to Bayer, the ad campaign commenced in early 1995, and the advertising began airing nationally in September 1995. See Bayer Brief, pp. 6-7. No one can seriously deny that hundreds of thousands, if not millions, of consumers fall into the defined class.

B

Common questions of law and fact abound in this case.

Can "[o]nly Genuine Bayer Aspirin reduce the risk of another heart attack by up to 50 percent," as asserted in the Bayer ads? Is Genuine Bayer "the only leading pain reliever that can help save your life," as Bayer proclaims in its ads? Did Bayer intentionally misrepresent the asserted unique nature and properties of its Genuine Bayer Aspirin? Did the putative class members rely on the advertisements? Did Bayer's "Added Value" advertisements result in increased sales and prices of Genuine

Bayer Aspirin to the monetary detriment of the putative class?

The plaintiffs have overcome the commonality hurdle without real difficulty.

C

The typicality and adequacy requirements of Rule 23(a) often overlap, and here, the plaintiffs falter.

Winston Morris is the comptroller of the Greene County, Alabama Board of Education. He has a baccalaureate degree and has taken several graduate courses in business administration, school law, and school administration. He started taking Genuine Bayer aspirin in 1969. Presently, he keeps Genuine Bayer Aspirin and Vicks Formula 44 in his medicine cabinet. Since the "Added Value" ad campaign commenced in 1996, he increased his intake of Genuine Bayer in an effort to avoid a second heart attack. He pays extra for Genuine Bayer because of the advertisements and because of the brand name. He knows of nothing wrong with the "Added Value" advertisements. *See* Morris Deposition ("Depo"), p. 46. As far as he knows, the ads are true. No one has told him anything that caused him to stop taking Bayer aspirin or to discredit the advertisements. *See Id.* at 48, 82, 84.

Morris continues to buy higher-priced Genuine Bayer aspirin because of product loyalty. *See Id.* at 49. If he could not find Genuine Bayer aspirin at one store, he would go to another

store to find it.[2] He knows that all aspirins are the same. *See Id.* at 53. He does not know of any injury or damage Bayer caused him to suffer. See *Id.* at 76, 89.

Morris has not read the complaint. *See Id.* at 69. He is not familiar with the concept of a class certification hearing. *See Id.* at 68. He has no idea of the size of the proposed class. He is unsure that he can represent a national class. *See Id.* at 71, 73. Instead of weighing his lawyers' advice and reaching his own decisions on issues affecting the class, he will defer totally to his lawyers. *See Id.* at 69.

Like Morris, plaintiff Cleophus Gaines is another prime candidate for a different Genuine Bayer advertising campaign. He has completed a master's degree and done work towards a doctorate. His affinity for Bayer aspirin is hereditary:

> Q    [W]hat types of aspirin have you taken since 1954 at the rate of two a day?
>
> A    Basically, my mother believed in Bayer aspirin and that's the aspirin that we basically took or she brought there in the household for us to take.

---

[2]"Q    [I]f you ran out of Bayer and couldn't find it in your store, you would pick up another aspirin, wouldn't you?
A    No, I wouldn't.
Q    You're going to be loyal to the brand?
A    I'll be loyal to the brand. Find it some place."
*Id.* at 58.

6

```
Q    So she always had Bayer and that's what you
     took?

A    Always.

Q    Is that still what you take?

A    Yes...My mother suggested I take Bayer
     aspirin.  If I had a cold I was always taking
     it.  It was good for a cold so it did me a lot
     of good.  If I had a fever, it did me a lot of
     good.  If I had aches and pains, it did me a
     lot of good. After football practice it did me
     a lot of good.  I felt that.  So I kept taking
     it.
```

Gaines Depo, pp. 25-27. Gaines' wife also takes Bayer aspirin on a daily basis. He encourages his children to do so. See Id. at 30.

Gaines once had a heart attack. After seeing the Genuine Bayer "Added Value" ads in 1996, he contacted his lawyer, because he was concerned about having had a heart attack after having taken Bayer all of his life.[3] He has not had a second heart attack. See Id. at 39-40. He has faith that Bayer can reduce his chances of a second heart attack. See Id. at 51-52. The price of Bayer aspirin is not his concern; for him, it is "[a]lways Bayer," and he never price shops for aspirin. Id. at 60. He ingested two Genuine Bayer aspirin on the morning of his deposition. Id. at 30.

---

[3] The basis of Gaines' concern is that since the "Added Value" ad campaign touts Genuine Bayer's effectiveness in reducing chances of a second heart attack, he should not have had a first heart attack after having taken Bayer aspirin all of his life. See Id. at 75-78. Of course, the efficacy *vel non* of Bayer aspirin in preventing a first heart attack is not at issue in this case.

Gaines has not talked with any other members of the putative class. He has "no idea" of why others purchase a particular brand of aspirin. *Id.* at 66. He has "no idea" of the number or location of other members of the putative class. He is unfamiliar with the class certification process.

In the most charitable light, the claims of purported class representatives are not typical of the claims of the putative class. Morris has no claims against Bayer. To the extent that Gaines has a claim, it is simply that his lifelong daily intake of two Bayer aspirin did not prevent him from having a heart attack. He continues buying Genuine Bayer, and he "hope[s] and pray[s]" that it will reduce his risk of a second heart attack. *Id.* at 52.

IV

While the evidence would compel a conclusion that counsel for the putative class are completely adequate, the court does not reach that issue for want of adequate class representatives.

V

Class certification must be denied.

Neither Gaines nor Morris has a case or controversy against Bayer.[4] Therefore, they must be dismissed as plaintiffs.

---

[4] The complaint does not allege any violation or liability for Genuine Bayer aspirin's failure to prevent a first heart attack.

Within fifteen (15) days of the date of this opinion, plaintiff Johnnie Mae Foster shall show cause, if any there be, why this case should not be dismissed or remanded to the Circuit Court of Greene County, Alabama.

DONE this 2d day of June, 1998.

---
UNITED STATES DISTRICT JUDGE
U. W. CLEMON